Please rise. Here to give you his Honorable Appellate Court of the 2nd Judicial District is now back in session. We're now going to adjourn with the Honorable Susan F. Robinson presiding. Please be seated. Your Honor, this case on the docket is Suite F, 15-1176. Karen Berlant v. Faith & Matthew Goldstein, defendants at the knees. On behalf of the defendant's appellate, on behalf of the defendant's appellate, on behalf of the defendant's appellate, on behalf of the defendant's appellate. I do happen to see many more people at table, so could we just have introduction of who everyone is? Your Honor, this is Jack Quinn. He's here on behalf of the plaintiff, Karen Berlant. I'm also a judge. I'm also an attorney. Johnson and Aurelio, on behalf of the defendant's appellate. Aurora Ostriaco and Timmy. But we only have two people arguing. We usually make provisions if we have more than that, and I wanted to make sure we hadn't missed something. All right, then Mr. Quinn. I'd just like to begin by reserving any extra time for rebuttal. This case today, as you're aware, is primarily a defamation case, a case with account for tortious interference. This case is about a teacher who just happened to work at the same school that her grandson was attending. The grandson's parents, her son, was in a contentious divorce, and unfortunately that divorce spilled over into Ms. Berlant's life, and the defendants, who are the kid's parents, made defamatory statements to plaintiff's employer, ultimately leading her to be fired. Now, this case was dismissed at the earliest stage of litigation, just at the pleading stage, on a 2615 motion. The court dismissed the case, citing what it believed was several problems with the statements, one of them saying that the statements could be construed innocently, and that's something that the defendants have argued today. The defendants argue that the statements are capable of an innocent construction, but I put forth that they're only capable of this innocent construction if they're stripped of any context of what their meaning is. But this is not the divorce case. And maybe this is where this case should be, back in divorce case or court, between the son and the daughter-in-law, the former daughter-in-law. We have to take them in the context here, that there is some concern that Mrs. Goldstein does not want contact between B.B. and Ms. Berlant for whatever reason, and the school district has a certain obligation to respect that and try to promote that. Your Honor, I would say that two things. First of all, I mean, I think that this spills out of the divorce case, but I think it's important that we recognize that Ms. Berlant was not a participant in that marriage or that divorce, and that she has her own rights and her rights to her employment. She, you know, her grandson was in kindergarten at the time this had happened, and she alleged that she had been working there for eight years. I mean, she had this relationship. She had been at this school since prior to the kid even being born, and while, of course, the kid's well-being is important, she also has her own independent rights. Now, I'd also say that she doesn't have a right to interact with her grandson in school. I don't think that's a protectable right, and if a parent requests to the school district that a particular teacher doesn't interact with the student, and if the school district decides to honor that request, I don't think that Ms. Berlant has a case. But the defendants can make that request. What they can't do is make false and defamatory statements. They can't make up falsehoods. If they've stated to the school, you know what, we just don't like his grandmother, we don't want her interacting with her students, and the school decided to honor them, that's one thing. But what we have here is allegations that there were incidents that were concocted, that she was upsetting the child in a way that didn't actually happen. She's not allowed, the defendant should not be allowed to make up falsehoods in order to achieve that purpose, and so I would say that that's what distinguishes her. And then what cannot, rather, we say that the fact that there's an e-mail saying that your client is in BB's classroom at the end of every day to help the children put on coats, is that, why isn't that an innocent construction of that statement? Because I think that that still zeroes in too much, it takes away too much of the context. Here's the point that I think you're missing. For defamation per se, which is the only allegation in the complaint, correct? That tortious interference, but there's no defamation for quad quad in the complaint, correct? Correct. So we cannot consider the context in order to determine whether or not you've established on its face, or pled defamation per se, that the defamatory character of the statements have to be apparent on their face. So they can't, we can't consider other facts and circumstances. We have to look at the statements on their face. And if they're capable of innocent construction, would you agree that your complaint fails? Well, here's the nuance, I think, in that. It's not that, you can't consider outside information, information that's apart from the publication. But what I'm saying is that if you look at the entire publication, the entire e-mails, that's when that comes into line. So I'm not suggesting that there's additional facts like, oh, well, in the context of, say, the divorce specifically. What I'm saying is. They plead the divorce in the complaint. The divorce, I think, is relevant for understanding the overall complaint, for understanding the actual emails, which I do think it's appropriate. But in terms of just determining what a specific language is per se, then I think, then I believe that the law is that you're supposed to consider. So, for instance, if there's one statement in there that's the defamatory part, you still, you read the entire e-mail as a whole. You see these e-mails together. And I would direct you to the case Tewitt v. Corbett. And in Tewitt v. Corbett, you had a book that was written about a mob case. And in that case, the attorney, in that case, in that case, there was a defense attorney who was bringing a defamation act. The defense attorney, the publication that was published, it was a book, said that the defense attorney had taken this million-dollar retainer and that he had assured that his clients were going to get off. And what the court said is the court reversed and found that there was per se defamation. What the court said was that, yeah, a million-dollar retainer, if you zero in just on that language, million-dollar retainer, that's an innocent construction. There's nothing wrong with an attorney taking a million-dollar retainer. What they said is that this was a book about gangster corruption. And in the context of what they were saying, in the full context of the article, what it said, the implication was clear, was that the idea was that this million-dollar retainer was to take money and then go fix the court case. And that that was defamatory because that's illegal. But it wasn't spelled out specifically. It was just the only reasonable interpretation that one could draw when you viewed the statements, that million-dollar retainer, in the context of the entire publication. And so what I'm saying is that when we look at these letters, if you look at it, you know, and if you look at the letter in context, if you say, oh, well, the teacher entered the classroom. Well, of course, teacher entering the classroom is not, is keeping their innocent construction. But if we look at this letter, it says, it says, I'm sorry to bother you with this issue. It's just that Karen Berlin has still, stills in parentheses, been coming to the classroom every day, at the end of the day, I believe, to help with codes. I was in the classroom helping out today and she came in again. Is there something we can do to ensure that she does not come into the classroom? Even if it's just for codes, because this is really confusing and upsetting for the child, the baby. Now, if you look at what this says, it says, I'm sorry to bother you again with this issue. It's not saying, oh, she just went into the classroom. It's saying this is a problem. Well, there was a previous, there's some evidence in the record, there was a previous communication where the, your client, not your client, but the defendants talked to Mr. Moreland saying, you know, our son is going to be here. We know that Kathy Palant is a sub here. We wouldn't, we don't want her in his classroom. What's wrong with that? I don't have a problem with her saying that they don't want her in the classroom. But if you read this, what she's, what they're saying is, is that, she didn't say that Ms. Burlett-Ryan has been coming in the classroom. She's saying he's still coming in the classroom. The implication is that there was a rule put in place that she's not supposed to be coming in there. That she's breaking the rules. You don't make that allegation, do you? I, well, two things. First of all, I'm not making that allegation that that's not in there, that there was a specific rule. But also, that goes to the point of the per se defamation, is that if there was that rule, that's context apart from the per se definition. But the point of this letter here is that if you look at the email, what that's saying is that she's still coming in. When you say somebody's still doing this, what you're emphasizing is that they're supposed to be not doing this. So, what this email, if you look at this email, what it suggests is that Mrs. Burlett is not supposed to be coming in. She's been coming in against the rule that we've set up. And she's coming in on her own volition. Now, what we do allege is that that's not true. That she wasn't coming in every day. And the times that she did come in was not of her own doing in breaking the rules. But rather because there was a specific request put to her to come in for a specific purpose by the teacher. That's why it's defamatory. Because what they suggest in this email, what they want the principal to believe, what they want the administrators to believe, is that Mrs. Burlett is a nuisance who's not following instructions to come in, to stay out of the classroom and stop interacting with the grandson. But what the reality is, what's plaid and what we need to take as true in a 2615 motion, is that Mrs. Burlett came in at the specific request of the teacher. That Mrs. Burlett was there. She said she didn't upset the kid. And so, that's why it's defamatory. It's because it's creating this false impression that she's being insubordinate. It's creating this impression. It's not saying that she's just coming in the classroom. It's implying that she's coming in the classroom to bother, to harass this kid, which isn't the case at all. And... Well, it's not that that was her intent, is it? It's not that... I mean, they didn't... In the emails, they don't suggest that the plaintiff's actions were intended to harass the child. It just was a result of the interaction. Isn't that what the... The context of the emails, the way... An innocent construction, or looking at it, a grandmother wants to see her son, her grandson. And there's nothing wrong with a grandma wanting to see her grandson. And it turns out that in the opinion of the parents, the mother and the stepfather, it's upsetting the boy. And they don't want that to happen. I would say that there's nothing wrong with a grandparent wanting to see his son. But there is something wrong with a grandparent. If the grandparent is told that they're not supposed to enter the classroom, if the teacher... And she does enter the classroom. If she's told she's not supposed to interact by her employer with the kid, and then she does interact, then it is wrong. And that's what we have here, is what they're saying in this email is that she's not supposed to be coming into the classroom, and she was, that this is a chronic problem. Let's go to the situation, I guess the last one in this series of statements, that she asked the principal if she could show B.B. a picture of his new half-sister. And Moreland says, no, do not approach, do not show. And there is an allegation that she did both. Now, one of the things in your pleading is that you don't mention the approach part. And she acknowledges that she approached that day, doesn't she? She alleged that she didn't pull him out. She didn't pull him out. She alleged that what the statement was is that she pulled him aside and showed him this picture after she'd been told not to, what the allegation is. So that's the defamatory statement. What the allegation is, is that apart from waving hi in passing or saying hello, she did not pull him aside, that she never pulled him aside from his friends, that she never showed him the picture. Well, what's the difference between approaching and pulling apart? I mean, he could be standing in a group of children on the playground, in the hallway, getting ready for the bus, and if she walks up and says hello, is that an approach in violation of the principal's earlier rule? I don't know that the principal said that she couldn't approach. I don't know what the principal said. Well, the letters indicates that that's what he said. I don't think that there would be a problem here if it was just a hello. But the idea was is that we don't have just an approach. We don't just have an action in passing. We have a specific thing she was told not to do. She's alleged, and we have to take this as true, that she did not do that specific thing. And that wasn't just wave hello or approach. That was actually go to him and engage him so that she could show him a picture. And the defendant said that that happened, and the plaintiff is saying that she didn't. And so that's a clear question of fact. And so I don't think the question is whether there was – I don't think we need to define what the greatest area of boundary is. There's a concrete, real concrete thing in going up to him in a manner to actually show him this picture, which is what she was specifically – I have two very quick questions because you're almost out of time. Just tell me what statement on its face suggests that plaintiff – what statement by the defendant suggested that the plaintiff lacked the ability to teach or otherwise perform professionally? What statement on its face showed that? I'll put you to the instance with the picture. Because if the principal directly tells the employee, don't do this specific act, and the employee specifically does do that act, that suggests you can't follow directions, that she's insubordinate. And that is – That suggests – again, that's your interpretation. What statement on its face by the defendants suggested that your client lacked the ability to teach or otherwise perform professionally? Not the statement of the administrators, the principal, or the superintendent. The statements of the defendants, which is the basis for your defamation case. Well, it's that she's engaging in activities that she's prohibited from doing, that she's insubordinate. It doesn't – they don't have to make the conclusory statement that she is insubordinate. They have to make statements that show that. The next question is what are the specific damages? Well, under the – ultimately, she lost her job. She's unable to work at the school. The school that she's been able to work at a long time. You have to plead specific damages. Well, in – Or loss of income. In a per-quad action, we do. And I – what I suggested in my brief is that if, for some reason, that this wasn't found to be a per-se action, that this could survive on a per-quad action. Or tortious interference, you also have to plead damages. Oh, also – So what are the – What I lost of income. There is no specific – there is no specific allegation as to specific dollar amounts. But I think that there's – I think a reasonable inference can be drawn that she was not collecting specific wages. All right, you will have an opportunity for response or reply. Thank you. Thank you, Your Honor. Please. Mr. Amarillo. Good morning, Your Honors. Again, Jonathan Amarillo for Defendant Appleby's, Faith, and Matthew Goldstein. I can tell from the questions I've already been asked that, Your Honors, you're very familiar with the record and the briefs. And I don't want to belabor all the points we make in our briefs concerning why each statement is subject to an innocent construction or an opinion, or failing both of those is privilege under qualified privilege exception. You know, I had a little argument on a motion to dismiss. There was some discussion. I don't have the page number. But there was discussion that the child, Bebe, is in the company of the plaintiff outside the school setting. Is that true? I don't know. The identification, et cetera, and the child doesn't get upset. So what is it about the school that causes a child to suddenly become upset when he sees his grandma? I don't personally know that, Your Honor. It's kind of perplexing when I'm reading it. And there didn't seem to be any challenge to those remarks. The child gets along fine with his grandma everywhere else except the school? Those remarks were made by counsel. I don't have any knowledge as to whether or not they're true, considering that they're outside the library. Well, the presumption is that lawyers don't lie to the court when they're making arguments. And I assume that's correct, Your Honor. I would agree with that. As to whether Bebe was actually upset by these interactions and what made him upset, I would submit that that is a matter of pure opinion. Whether a toddler is upset. It's not just one isolated comment that the child's upset. They keep saying it again and again and again. They do keep saying it. And time and time again, it's an opinion. And it's not actionable as such. I'd like to just briefly hit on a few overarching themes that I think are pertinent to the Court's consideration. Instead, as I said, of going through each statement, which I'm more than happy to do as well. And the first one of those is that most of the statements that plaintiff said defendant improperly inserted into the motion to dismiss were nothing new. And by that, I mean that they were found in the exhibits that were attached to the amended complaint. And, of course, those exhibits are a part of the complaint. So when plaintiff spends most or at least much of her briefing complaining about those statements being included in the motion to dismiss, I don't think they stand on very firm ground there because they're already a part of the pleadings and subject to attack in a motion to dismiss. Second, to the extent that there were any extraneous allegations, and there were one or two, I think the only one plaintiff actually references is that which parent had primary custody of B at the time, the trial court was very careful not to rely on any of those statements in its ruling. So for purposes of appeal, they're entirely irrelevant and a distraction. I think it's also important to recognize that much, if not all, of plaintiff's criticisms in this appeal of that motion to dismiss in the trial court's order centered not on any factual disputes, which would defeat a 2615 motion to dismiss, but on the fact that the trial court simply disagreed with plaintiff's interpretation of the statements at issue. The law is very clear that considering a section 2615 motion to dismiss a defamation per se claim, courts are not obligated or obliged to accept the plaintiff's interpretation of the statements at issue. The meaning of disputed statements isn't a fact that can be alleged and accepted as true. Counsel just cited the Tewitt case. The Tewitt case is very clear on that point, and that's why we cite it in our brief for that proposition. The preliminary construction of statement is a question of law for the courts, and that is what the court did here. So neither defendants nor the trial court were obligated to accept plaintiff's interpretation of the statements. We only had to accept, and the trial court only had to accept for purposes of the 2615 motion, the existence of the statements themselves. And that's exactly what happened here. The fact that they didn't, that the trial court didn't accept that interpretation, isn't a reason to defeat the 2615 motion or a reason, obviously, to overturn the order. So how about on the qualified privilege or the privilege period? That one doesn't get the same exception that innocent construction and opinion get on 2615. I mean, it's different. And while we accept the fact that the parents would be concerned about this child or mom and her husband would be concerned, what's not to say that Ms. Berlant is not also concerned? I mean, there the judge seems to be stepping beyond his 2615 rule. I'm glad you brought up the qualified privilege exception, Your Honor, because I think it's an important element of this case. And obviously, even if the court finds that the plaintiff sufficiently pleaded defamation per se claim or the court finds that plaintiff for the first time can assert defamation per quad claim on appeal, and I'll return to that, if I may, in a moment, plaintiff argues that the qualified privilege issue, as you just mentioned, is or should be rather considered a factual issue specific to this context. I believe that's actually incorrect. I think the law is quite clear that it's a legal question to be decided by the courts when, and this is the important part of it, when the facts on which the assertion of privilege relies are on the face of the complaint. And that's what we have here. I think the law is quite clear when you're deciding whether a qualified privilege exists. Courts have to look at the general type of communication involved, not to the particular communication at issue in the case. Here we're dealing with statements made by concerned parents to school administrators about the well-being of their child. That's well within the four corners of the complaint in the exhibits. I think it's very clear from the exhibits. And that easily falls into the restatement test, which we go through in our brief. I think that the situation that was contemplated by the trial court is actually very compelling and illuminating for purposes of evaluating whether the qualified privilege exists and applies here. And I should mention that not even plaintiff challenges on appeal whether the qualified privilege exists and applies. They only raise the factual question as to whether that privilege should be defeated, which I'll return to in a moment. I think it's easy to imagine the bullying situation that the trial court focused on and used as guidance. Or something similar. A child comes home from school. Maybe his or her face is scuffed up. Maybe their clothing is torn. Maybe they're crying. Maybe they seem withdrawn. Maybe they say that they're being bullied by another student at school. Or that a teacher said something that scared them or did something that was inappropriate. The parent, rightfully, is going to feel compelled to call the school administrators and to straighten that situation out and to ensure the safety of their child. Do we want to chill that kind of speech? Do we want parents to be concerned about exposing themselves to a defamation suit by contacting a school and inquiring as to about a situation that may affect the well-being of their child? I think the answer to that is very clear. We've seen the consequences, the horrific consequences of breakdowns in communication between parents, school staff, and school administrators concerning the well-being of their child. In the still tragic but most benign circumstances, that can lead to things like depression in the children and long-term mental health issues. In the most extreme but all-too-often circumstances, that can lead to things like suicide and school shootings. We just saw another school shooting in an elementary school in South Carolina yesterday. But to use the bully situation as an almost four-corners analysis creates a problem, I think, in this case, because this is the child's grandmother. How can we relate bullying and the child's grandmother? I mean, this is a tough one. I agree with you, Your Honor. I'm not accusing the grandmother of bullying Bibi in any way. I only use that example to show that when we're talking about the general type of communication, which I think we're compelled to, we're talking about a communication between the parent and the school administrator, who the subject of that communication is doesn't enter into the restatement test. While I agree the bullying analogy doesn't fit perfectly in this specific factual context, that's not the legal test that applies. If I may return to the defamation per se issue, I think that Plaintiff tries to avoid the conclusion that these are statements that are subject to an innocent construction and statements that are opinion by denying that the gravamen of Faith and Matthew's statements to the school was that the plaintiff's actions upset Bibi, as you asked about, Justice Burkett. But tellingly, very tellingly, every statement Plaintiff complains about in their appellate brief, they then immediately and expressly tie to Bibi being upset. That's true of the statement that Plaintiff went to Bibi's classroom to help with the coats. That's true of the statement that Plaintiff pulled Bibi aside or otherwise spoke to him about his half-sister. However, in these and all the other circumstances that Plaintiff complains about, she explicitly ties each statement to the assertion that supposedly makes that statement defamatory, that Bibi was upset. And as I said before, that is a matter of pure opinion. We're not talking about mixed opinion here. It's a matter of pure opinion. Whether a toddler is upset is a matter of opinion. What made that toddler upset is a matter of opinion. Plaintiff suggested that there's an allegation of insubordination. I don't think that's actually anywhere to be found in their amended complaint. There's a disconnect between the facts that are actually alleged in the complaint and the arguments that were presented just a few minutes ago. Plaintiff argues that Faith and Matthew accused her of being insubordinate. That allegation is found nowhere in the amended complaint. Their argument is that in a 2615 motion, all reasonable inferences go against the movement. Correct, Your Honor. Their argument is that's a reasonable inference from the language that was used. The use of the word still, I would argue that's not a reasonable inference, Your Honor. It could just as easily and I think is more clearly and plainly an inference that they've spoken about this issue before. Plaintiff also mentioned the possibility of a defamation per quad claim, and I want to be very clear about this because I think in what amounts to an acknowledgement that the defamation per se claim isn't sufficient on its face as a matter of law. They say, well, okay, if it's not defamation per se, then it's defamation per quad in the trial court erred by dismissing her defamation per quad claim. There was never a defamation per quad claim pleaded in this case. They say, and I should add, they never asked for leave to plead one, either in writing or orally. That is a matter of black-letter law. It is a matter of black-letter law that you cannot plead a new claim on appeal. They say that they're not pleading a new claim, but respectfully, I don't, that argument strains credulity. Is it waived? It is. Absolutely, it's waived and forfeited, Your Honor. A defamation per se claim and a defamation per quad claim are separate causes of action. They are separate claims. If you were to allow a party to raise a new claim, a new cause of action on appeal, it would defeat all the policy reasons underlying the waiver and forfeiture doctrines. Well, did the – there was an amended complaint, but did the dismissal with prejudice come too soon in that there should have been an opportunity to replete? I don't believe it did, Your Honor, and the reason I don't believe it did is because the – there's only three statements that are at issue. So no matter how they replete them, they're always going to be subject to amnesty construction, they're always going to be opinion, and they're always going to be subject to the qualified immunity privilege. So no matter how many times they replete, they'd never be able to avoid those facts. The case that plaintiff relies on for the proposition that she can state a new claim here on appeal for the first time when seeking reversal, and I emphasize that for a reason, when seeking reversal of a trial court's order, doesn't support that proposition. I want to just briefly address this because I think it's important. Duncan v. Peterson is that case, and that case involved a situation where summary judgment was entered on behalf – or for the defendants on the grounds of the ecclesiastical abstention doctrine. On review, after the appellate court found that it didn't need to actually decide any matters of religious doctrine in order to resolve the case, it went on to examine whether there were any genuine issues of material fact that would have otherwise defeated summary judgment. The appellate court did examine whether there were facts supporting an unpled false light claim, as plaintiff argues, but I think plaintiff misreads that case. The appellate court didn't go into that because they were ignoring the doctrines of waiver and forfeiture, as you asked about, Justice Spence. In fact, they didn't even mention waiver and forfeiture in that case. They did it because of the well-established rule that a trial court's judgment must be affirmed on any basis appearing in the record. So once the appellate court decided that the ecclesiastical abstention doctrine didn't apply, they had to go on to examine whether the summary judgment in order could be upheld on any other basis. They did so. That's why the appellate court examined the false light claim in that case, not because they were ignoring waiver and forfeiture. The same rule doesn't apply when a party is seeking to challenge rather than reverse a trial court's judgment, and I think that is the legal distinction that plaintiff overlooks. Go to address the damages issue. Thank you, Your Honor. The damages issue, as was pointed out by Justice Burkett, doesn't apply for the defamation per se claim because damages are assumed in defamation. Let me ask you a question in this way. Yes. To what degree of specificity does the damages have to be pled? With great specificity, Your Honor. We've certainly cited a number of cases for that proposition, and it simply don't exist here. Plaintiff said that repeatedly that his client was fired. That's incorrect. The record is very clear. The plaintiff still works for the school district. She's still free to teach at the four other schools in that district. They haven't pled any harm whatsoever, any financial harm, as they're required to do for the tortious interference claim. It's simply not there. Would that be possible because they brought the claim quickly after that last correspondence, after the letter? Maybe there would be damages if they had waited a little while. They also had an amended complaint that was filed several months later, Your Honor, so they had more than enough opportunity to do so. But was it during the school year when she could have been employed as a substitute or what the other school was? Well, she was a substitute teacher who was already employed at all those other schools, Your Honor, so I don't believe the timing would be determinative of anything. She was teaching at those other schools or at least had the opportunity to. But she taught, according to Mrs. Goldstein, she taught every day at the school she couldn't, that she was prohibited from teaching at. And so she taught there every day because one of her e-mails says she continues to come in every day. It doesn't say every day she's there. It says every day. Then she taught there every day, and now she can't teach there every day, and so we don't know if she can teach at the other places yet. Well, that was a statement, Your Honor, I believe that was actually made by Faith Goldstein and not by the plaintiff. I'm not sure that Faith Goldstein knows exactly the plaintiff's teaching schedule. She didn't make the statement. I mean, it seems like there are a lot of statements here that are being thrown about that maybe are just mean as opposed to having anything to do with the welfare of this child, and that's what bothers me the most about this case, counsel. I don't think there's anything mean about saying that a teacher comes in and helps students with their code. Every day. She makes a point to say every day. I take that as Mrs. Berlant teaches at, studs at that school every day. So how can we have any record that she teaches or subs any place else because this is brought so quickly? Well, the record is very clear that she can't teach at all the other schools. The letter that the school sent her made that quite clear. And with regard to the timing of the complaint and the amended complaint, that's entirely what the plaintiff's doing. I don't think it would be fair to hold that against the defendants. Then why shouldn't she have an opportunity now that a school year has passed to have a chance to amend that on the 6-15? With regard to the tortious interference claim. Correct. Because the qualified immunity privilege still applies. If there are no other questions, defendants ask. Mr. Quinch. To get back to the subject of qualified privilege. My problem with the qualified privilege isn't so much the idea that a parent should be able to freely communicate with teachers. My problem with the qualified privilege as it was brought in this case is that it wasn't brought in the 2-6-1-5 motion dismissed. There was no affirmative defense pleading filed. The plaintiff didn't have an opportunity to file an answer to the affirmative defenses. The 2-6-1-5 motion, if you look at the actual motion that was filed, essentially just challenged the truth of the claim. It said that truth is a defense of defamation. That was the primary grounds for the 2-6-1-5 motion. The absolute privilege didn't come up until the day of the hearing. So that's my problem. I think the plaintiff should have had a fuller chance to address it. But I would agree that a parent should be able to communicate with teachers. And there are public policy concerns with that. But it shouldn't be an absolute privilege, which is what we've elevated to here because we're not even – because the plaintiff seems to suggest it's so important that fabrications should be allowed to be made, because that's what we've alleged is that these were fabrications. Now, even if the privilege is there, I think there's an abusive privilege alleged. Now, whether a privilege applies is a question of law. But whether there's an abusive privilege, that's a question of fact. And two things. First of all, we've alleged that these were concocted statements, that they were fabricated. That suggests that they were made for a specific purpose to achieve a specific agenda, not that there was some sort of innocent mistake or mischaracterization. Moreover, we've alleged in here that we've alleged the contentious nature of the divorce. And that's a motive and suggests that there's reasons besides the well-being of Bebe that these statements are being made. If you look at Myers versus Levin, that's a case where you had a high school football coach, a high school football coach has a son who's on the team. And a parent who has a son on the team sends the school administrators a letter with a bunch of allegations that he was a bad football coach. And there's more specifics in the case. But what the court found there was that there was a fact question as to abusive privilege. And what the court specifically cited was that the court specifically noted that at the time that this letter was sent defaming the football coach, the football coach's son and the person who sent the letter's son were both competing for the quarterback position. The court said, well, that's a fact question. That suggests that something else could be going on here. Well, I put it in the same way, the fact that we have this spillover from this divorce, this contentious divorce, that there's a fact question there for abusive privilege. And while there's public policy concerns in protecting a parent's right to communicate, there's also policy concerns that, look, you've got two sides of the family that split up in the divorce, and they're both related to this kid. And if one parent is making defamatory statements to alienate a grandmother from a grandchild, well, that's not good for the well-being of the kid either. And we should have at least the opportunity to get to court when we believe and we plead that there's an abusive privilege, the opportunity to show that that abusive privilege is there. You know, you've mentioned this in your argument that they did not plead privilege in their motion to dismiss. Yeah. However, in your response to the motion to dismiss, plaintiff raises the issue of privilege. Right? And it was argued. It was argued in the motion and in response to the motion to dismiss as to the issue of a condition of privilege to protect their son's interests. Why is the plaintiff still allowed to be a substitute teacher at other schools within the district? It is ridiculous to refer the plaintiff to do anything to harm her grandson. So the issue was raised. Why the plaintiff? Right. And I think that the issue, I think that the issue. So it was right for consideration by the child court, correct? Well, I think that, I think that, I think that when you have a affirmative defense like that, that the proper, that the court was made a finding, the court stated that he found that this is a reasonable concern of the parents. And that comes on some sort of, that wasn't pled by the plaintiff. So that comes from someone else. And it comes from statements in the response or statements made that aren't supported by affidavit and statements that aren't pled in affirmative defense. So I would just say that I don't think procedurally it was the thing to be relied on by the court at the time that it made its decision to come to a final and prejudicial conclusion. I do, again, I think the primary matter is that there's a well-pled abusive privilege and that it's important that it's, frankly, I think if they had filed affirmative defense of abusive privilege, that it would be a matter then to ask whether there was an abusive privilege. So I think that's the issue with that. As far as the per quod defamation, I just say that I don't think there's a difference between waiver of an issue and there's, and what is specifically pled and what's labeled. And my opinion is, is that, my legal opinion is, is that this is per se defamation. Per se defamation was alleged. But the part where it says per se, that's the label. That's the heading on the complaint. To actually see what the substance of the complaint is, you look at the actual allegations. And my argument is simply that per quod defamation essentially has one extra allegation to it, that that allegation is in itself in the complaint. So that if, theoretically, if you just look at the allegations of the complaint, if you were to say that there wasn't per se defamation, you could find that there's per quod defamation. I don't think it's pleading something new for the first time. For the same reason that, say, by a Scribner's error, it said breach of contract at the top of the complaint. For definition of what, as the defendant pointed out in his argument, that you still hadn't pled damages. And you had time with your amendment to complain. I think that, I don't think an exact dollar amount was pled. I think that it was pled, though, that as a result she did lose her job, that she had an interest in having that job. Well, she didn't lose her job. She lost an assignment. She still has her job. Well, she lost the ability to get that school. That's where she had an opportunity every day. I do think that perhaps more damages, allegations could be made. I don't think that's why the court dismissed the case with prejudice. And I would submit that that was the only problem that the court probably would have and should have allowed that part to be implied. Maher relinquished the NOVO, and even if the trial court didn't base its decision on that, we must make sure that all the elements have been pled. Would you agree with that? I would agree with that. But I would say that if there's a finding that that's the issue, that that would want to go to the question of whether it should be dismissed with prejudice or not, rather than a question of just simply whether it should be dismissed as it stands. In terms of opinion, I think it's wrong to conclude that, oh, someone being upset, it's not a pure opinion, as counsel said. I think that's ridiculous. I think that a person can observe a child and see that they're upset. You can ask somebody if they're upset. Whether or not somebody's upset is not a matter of pure opinion. And in their argument, they say in their response brief that emotional distress, the question of whether it is emotional distress, that's completely unverifiable opinion. Well, counsel, you may not believe that it's pure opinion, but there are plenty of cases that seem to say that, that a generalized statement like that is not subject to specific verification. So it's not a fact. It's an opinion. I think that the cases show that if something like that is in a specific context, in a specific situation, then it can be. If the kid is in the room smiling, happy, and somebody alleges that the plaintiff went into the room and upset him, that's capable of simply not being true. Well, they're talking about after school. I mean, I don't know what after school means here. That's kind of up in the air and could be a fact matter. But he comes home upset. So it's not when he's at school. So we don't have anybody to verify or not verify that. I think that, well, I think that that's, I think that that's not, I think whether or not he's upset is still verifiable. I mean, what if it turns out that he wasn't upset at all? What if the person admitted, oh, you know what, I didn't even see him after school. It was just something I said. I mean, the point is that creates fact questions. That's something that can be looked in with discovery. That can be something that can be looked into. I don't think that the idea of upset should just be given this general status of something that cannot ever be verified or unverified. And, you know, we have a tort, intentional infliction of emotional distress. I mean, obviously fact finders are able to look and hear testimony and make a determination of whether someone's distressed or not. I mean, that's the reality. And I'd also ask you to look at Myers v. Levy on that. That's the case with the football coach again. And in that case, there were statements made like the football coach didn't show concern for players. That's just as general and vague. And now the court didn't really discuss those interpretations, but these are examples. No, it talks about the fact that they might be competing for the same job, which, in fact, is something that can be determined by fact. Right, right. On the actual males' point, I just mean that if you say, if you can't say that a kid is upset, that's just purely opinion. I saw this person, whether or not this person upset, that's purely opinion. And someone can just speculate on it. Those speculations are protected because that's just a matter of pure opinion. In this football coach case, there was a statement made that said basically, plaintiff lacks concern for players who are injured. Plaintiff lacks true concern. So true concern for young men who devote so much time to the program. I mean, that's just as vague in general. And in that case, those statements did survive all the way through the motion, through a motion for summary judgment where the court remanded it back because they found that on the basis of the point about the quarterbacks competing, that there was actual males. So I think in these contexts, I mean, if the kid is not upset at all, I mean, if this is just a fabrication, if this is just an agenda to get Miss Berlin removed from her position, then I absolutely think that that's something verifiable, something that should be considered at an evidentiary stage. All right. If you would please wrap up because your time has passed. Okay. I will conclude on that point. Thank you. Thank you. All right. Thank you for argument today, counsel. We will take the matter under advisement. We will render a decision in due course. And we will now stand in recess today. And maybe just in time with that fire engine going off. Thank you.